# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 04-1211

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Dale Robert Bach, | * | |
| | * | CR 01-221 PAM/RLE |
| Defendant - Appellant. | * | |

Submitted: October 18, 2004
Filed: March 14, 2005

Before MURPHY, HEANEY, and BEAM, Circuit Judges.

MURPHY, Circuit Judge.

A jury convicted Dale Robert Bach for possessing visual depictions of a minor engaged in sexually explicit activity, for transporting such an image, for using a minor to produce such material, and for the receipt of child pornography, all in interstate or foreign commerce. The district court[1] sentenced Bach to 180 months on the manufacturing count and 121 months on each of the other three counts, all to run concurrently. Bach appeals, arguing that there was no probable cause for the search of his residence, that his convictions are constitutionally infirm, and that the district

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

SCANNED
MAY 09 2005
U.S. DISTRICT COURT ST. PAUL

court erred by applying a mandatory minimum sentence on the manufacturing count. We affirm.

I.

In October 2000 Sergeant Brook Schaub of the St. Paul Police Department was contacted by a mother concerned about a document on her family computer. It contained a partial log of a communication between her minor son (AM)[2] and someone using the name "dlbch15," asking if AM wanted to see dlbch15 again and to suggest a place where he could hide something for AM. Dlbch15 added that he would like to see AM if he were going to drive to St. Paul to deliver it. When the police questioned AM about this message, he said it had been received in a chat room on the website www.yahoo.com and that dlbch15 planned to hide Playboy magazines for him in the bushes near a business on Ford Parkway. AM admitted that he had met dlbch15 on Ford Parkway, but he denied any sexual contact with him. Police showed AM a photo of Bach, but he did not identify him as dlbch15.

When Sergeant Schaub accessed the user profile[3] for dlbch15 at Yahoo!, he found it listed a male named Dale, age 26, from Minneapolis. Schaub also discovered that the nickname dlbch15 was linked to the email address dlbch15@prodigy.com, and he sent an administrative subpoena to Prodigy seeking subscriber information. Prodigy identified Dale Bach as the subscriber and listed his address and telephone number. Further investigation revealed that Bach was a registered sex offender because of a 1995 state conviction for criminal sexual conduct in the third degree, involving sex with a fourteen year old boy.

---

[2]Initials are used when minors are referenced.

[3]An individual registered with Yahoo! can create a public profile on its member directory.

Schaub sent a letter to Yahoo!, requesting that it retain on its server any incoming or outgoing email messages associated with the account dlbch15@yahoo.com. He then obtained a Ramsey County search warrant on January 3, 2001, seeking Yahoo! emails between dlbch15 and possible victims of criminal sexual conduct, including but not limited to AM. The warrant also sought internet protocol addresses (IPs)[4] linking dlbch15 to possible victims of criminal sexual conduct or of online enticement for sexual purposes. The warrant was faxed from Minnesota to Yahoo! in Santa Clara, California.

Five days later Schaub received a package from Yahoo!. Inside was a zip disk containing all of the emails preserved in the accounts belonging to AM and Bach (dlbch15@yahoo.com). Yahoo! also sent printed copies of six emails retrieved from Bach's account. Among them was one dated August 1, 2000, apparently a reply to a message from dlbch15@yahoo.com about meeting the next day and exchanging pictures. Other email messages concerned dlbch15's meeting and exchanging pictures with various individuals.

One email in Bach's account had been received from Fabio Marco in Italy; that transmission is the basis for Bach's conviction for receiving child pornography. Marco's email to Bach had an attached photograph which showed a young nude boy sitting in a tree, grinning, with his pelvis tilted upward, his legs opened wide, and a full erection. Below the image was the name of AC, a well known child entertainer. Evidence at trial showed that a photograph of AC's head had been skillfully inserted onto the photograph of the nude boy so that the resulting image appeared to be a nude picture of AC posing in the tree.

---

[4]An IP is generated when one computer connects with another through the internet; each IP is unique to a particular computer at the time of the connection and can be used to identify the source of the connection.

In some of his email messages, dlbch15 directed the recipient to visit a particular site to view a picture of himself. The individual pictured at that site looks like Bach's driver license photo. The Yahoo! files also revealed that dlbch15 used other screen names, including "seeknboyz" and one incorporating Bach's telephone number. The registration material associated with the Yahoo! account listed Minneapolis as dlbch15's residence and December 27, 1958 as his birthdate, the same day as Bach's. Since Yahoo! was not Bach's internet service provider, it was unable to generate and provide IPs linking him to other addresses.

Officers obtained a search warrant to search Bach's residence near the end of January 2001. The warrant authorized seizure of computer hard drives, storage devices, and other evidence tending "to show the possession or distribution of child pornography or the enticement of children online." The warrant was executed on January 29, and officers seized various items, including Bach's computer, his disks, and a digital camera. Among the effects seized were seven digital camera images which Bach had taken in August 2000 of a boy engaging in sexually explicit conduct. These pictures were of RH, who testified at trial that he was the boy in the photos and that he had been sixteen at the time they were made. The trial evidence also showed that one photograph of RH had been sent on the internet from Bach's computer to another minor with whom he corresponded.

Bach was indicted on August 7, 2001 in eight counts: for possessing visual depictions produced by using a minor engaged in sexually explicit conduct in interstate or foreign commerce, in violation of 18 U.S.C. § 2252(a)(4) (count 1); for transmitting in interstate or foreign commerce a visual depiction produced by using a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(1) (count 4); for receiving visual depictions produced by using a minor engaged in sexually explicit conduct in interstate or foreign commerce, in violation of 18 U.S.C. § 2252(a)(2) (count 5); for possessing child pornography in interstate or foreign commerce, in violation of 18 U.S.C. § 2252A(a)(5) (count 2); for transmitting child

pornography in interstate or foreign commerce, in violation of 18 U.S.C. § 2252A(a)(1) (count 3); for receiving child pornography in interstate or foreign commerce, in violation of 18 U.S.C. § 2252A(a)(2) (count 6); and for employing a minor to produce visual depictions involving sexually explicit conduct in interstate or foreign commerce, in violation of 18 U.S.C. § 2251(a) (count 7). An eighth count charged forfeiture under 18 U.S.C. § 2253, but Bach stipulated to that count before trial.

Bach moved to suppress the evidence obtained by the search warrants. The district court suppressed the evidence obtained from Yahoo! on the ground that a police officer had not been present when the warrant was executed, but the court declined to suppress the evidence from Bach's residence, finding independent probable cause for that warrant. The government filed an interlocutory appeal from the order suppressing evidence, and we reversed and remanded. United States v. Bach, 310 F.3d 1063 (8th Cir. 2002), cert. denied, 538 U.S. 993 (2003).

Before trial Bach moved to dismiss counts 2, 3, and 6, which all charged offenses under 18 U.S.C. § 2252A. He argued that the same criminal conduct had been charged in counts 1, 4, and 5 under 18 U.S.C. § 2252. After the district court granted the motion, the government moved for reconsideration. The court decided on reconsideration that the government could proceed to trial under § 2252A for the charge in count 6 rather than being limited to the § 2252 charge in count 5, ruling that that prosecution was not barred by the Supreme Court's decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002).

The indictment was redacted as a result of the pretrial motions, and the case was presented to the jury on four counts. Count 1 charged Bach with possession of visual depictions whose production involved the use of a minor engaged in sexually explicit conduct in interstate or foreign commerce, in violation of 18 U.S.C. § 2252(a)(4). Count 4 charged Bach with transmission in interstate or foreign

commerce of a visual depiction whose production involved the use of a minor engaged in sexually explicit conduct (one picture of RH), in violation of 18 U.S.C. § 2252(a)(1). Count 6 charged Bach with receiving child pornography in interstate or foreign commerce (the picture with AC's face), in violation of 18 U.S.C. § 2252A(a)(2). Count 7 charged Bach with employing a minor to produce visual depictions of the minor involved in sexually explicit conduct in interstate or foreign commerce (pictures of RH), in violation of 18 U.S.C. § 2251(a). Bach was convicted on all four counts, and the district court imposed concurrent sentences of 121 months for counts 1, 4, and 6 and 180 months for count 7.

II.

On appeal, Bach argues that there was not probable cause to search his residence, that the images he took of RH were protected under Lawrence v. Texas, 539 U.S. 558 (2003), that his prosecution for receipt of child pornography under 18 U.S.C. § 2252A was unconstitutional under Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), and that the district court erred in imposing a 15 year mandatory minimum sentence for his conviction for manufacturing visual depictions of a minor involved in sexually explicit conduct. The government responds that the district court did not err in its rulings on these issues.[5]

---

[5]Bach also argues that the Ramsey County court did not have jurisdiction to issue a warrant authorizing a search of his Yahoo! account in California. He raised this argument in the district court about a month before trial, but the court declined to reach it because it was raised at such a late date. See Fed. R. Crim. P. 12(e) (objection waived if not raised by deadline set by the court). Bach has not shown that this was an abuse of discretion. See United States v. Casares-Cardenas, 14 F.3d 1283, 1286 (8th Cir. 1994) (district court has discretion to refuse to consider untimely pretrial motions where no good cause is offered for late submission).

We review factual findings of the district court for clear error and findings of probable cause de novo. Ornelas v. United States, 517 U.S. 690, 699 (1996). We also apply de novo review to constitutional challenges to a criminal statute, United States v. Koons, 300 F.3d 985, 990 (8th Cir. 2002), and to questions of federal law involving statutory interpretation. Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 628 (8th Cir. 2001).

A.

Under the Fourth Amendment a search warrant can only be issued with probable cause. Probable cause exists if under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found" in the place to be searched. Illinois v. Gates, 462 U.S. 213, 238 (1983). When a warrant is not supported by probable cause, any evidence obtained in a search is generally inadmissible. Mapp v. Ohio, 367 U.S. 643, 655-57 (1961).

Bach argues that there was no probable cause to search for a computer in his residence because he could have accessed the internet from other locations. He contends that a valid warrant for searching his home computer could not have been obtained without cross references between his telephone records and IPs provided by his service provider. There was no showing he says of any link between the alleged criminal activity and a computer located at his residence.

Sergeant Quinn-Robinson prepared an affidavit in support of the warrant to search Bach's apartment, for items such as computer systems and data on hard drives or removable media. Her affidavit incorporated information from the earlier affidavit of Sergeant Schaub in support of the Yahoo! warrant. She recounted that Schaub had specialized training and experience in the investigation of internet crimes and in the search and seizure of computer systems, that he was aware that computers and the internet had frequently replaced file cabinets as storage places for evidence, and that

it was not uncommon for individuals to retain text records of chats with children for later review and fantasy. Sergeant Quinn-Robinson stated that she was also informed that dlbch15 had corresponded over the internet and had met in person with the minor AM, that the user profile of dlbch15's Yahoo! account listed a male named Dale, aged 26, from Minneapolis, Minnesota, and that the subscriber information for the Prodigy account dlbch15@prodigy.com listed Dale Bach, Bach's address, and his telephone number. Her affidavit also indicated that Bach had previously been convicted of criminal sexual conduct for having sex with a fourteen year old male.

In addition, the affidavit included information obtained from Yahoo! under the warrant faxed to the company. Registration material for dlbch15's Yahoo! account showed Minneapolis as the user's city of residence and listed Bach's date of birth. The account material listed an additional screen name that incorporated Bach's home telephone number. Sergeant Quinn-Robinson's affidavit also reported information about email messages produced from Bach's Yahoo! account, including the picture with AC's face and communications about exchanging pictures.

Probable cause is not a rigidly defined concept, for it depends on the totality of the circumstances and the specific facts in a given situation. Gates, 462 U.S. at 232. Even without IPs, it was reasonable to believe on the basis of the other information in the affidavit that Bach had a computer at his residence where he engaged in chats and received or stored images. We conclude that the information contained in the application to search Bach's residence, for a computer and data contained on the computer and storage devices, was sufficient to create probable cause that evidence of criminal activity would be found there.

B.

Digital photos which Bach took at his apartment of sixteen year old RH are connected to counts 1, 4, and 7. These counts charged Bach with *possessing* visual

depictions which had been produced by using a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4) (count 1), *transmitting* such a visual depiction in violation of 18 U.S.C. § 2252(a)(1) (count 4), and *using* a minor to produce visual depictions of the minor engaged in sexually explicit conduct in violation of § 2251(a) (count 7). Some of these visual depictions show RH masturbating and Bach performing oral sex on him.

Bach argues that these photos portray noncriminal consensual sexual conduct because RH was sixteen and the age of consent under Minnesota and federal law is sixteen. Minn. Stat. § 609.342 et seq.; 18 U.S.C. § 2243. He contends that the images are protected by the liberty and privacy components of the due process clause of the Fifth Amendment under Lawrence v. Texas, 539 U.S. 558 (2003). The government responds that the relevant definition of a minor for these offenses is found in 18 U.S.C. § 2256, which defines a minor as any person under the age of eighteen years. It asserts that Congress had a rational basis for criminalizing pornography involving this age group and that Bach's activities were not protected under the First or Fifth Amendments, pointing out that Lawrence did not involve a minor or the production and distribution of child pornography.

Bach's constitutional arguments relating to his prosecution for possession of pictures of minors engaging in sexually explicit conduct are founded on Lawrence. In that case the Supreme Court recognized a protected liberty interest, under the due process clause of the Fourteenth Amendment, for private and consensual sexual conduct between same sex adults. As the Court specifically pointed out, Lawrence did not involve minors or others "who might be injured or coerced," 539 U.S. at 578, and the conduct protected there was very different from that involved in Bach's prosecution. Here, a forty one year old defendant took pictures of a sixteen year old boy masturbating and engaging in oral sex, kept the pictures, and then transmitted one of them over the internet. RH testified that he had at first refused many requests by

Bach to pose nude and finally posed without pants after Bach offered him money to do it.

The liberty interest the Court recognized in Lawrence was for adults engaging in consensual sexual relations in private, but in this case Bach engaged in sex with a minor and pressured him to pose nude for photographs, one of which was sent over the internet. We find no support in Lawrence to prevent Bach's prosecution under §§ 2251 and 2252. Bach's privacy argument also fails, for his activities related to child pornography are not protected by a constitutional right of privacy. See United States v. Vincent, 167 F.3d 428, 431 (8th Cir. 1999). As we pointed out in Vincent, "[t]he Constitution offers less protection when sexually explicit material depicts minors rather than adults." Id. Bach has not shown that the conduct charged in counts 1, 4, and 7 was constitutionally protected.

The First Amendment does not prevent prosecution for child pornography, New York v. Ferber, 458 U.S. 747 (1982), and Congress may regulate pornography involving all minors under the age of eighteen if it has a rational basis for doing so. See United States v. Freeman, 808 F.2d 1290, 1293 (8th Cir. 1987). Congress changed the definition of minor in the child pornography laws in 1984 to apply to anyone under eighteen. It found that the previous ceiling of sixteen had hampered enforcement of child pornography laws. With that ceiling there was sometimes confusion about whether a subject was a minor since children enter puberty at differing ages. H.R. Rep. No. 98-536, at 7-8 (1983), reprinted in 1994 U.S.C.C.A.N. 492, 498-99; Freeman, 808 F.2d at 1293. We conclude that the congressional choice to regulate child pornography by defining minor as an individual under eighteen is rationally related to the government's legitimate interest in enforcing child pornography laws, id., and that Bach's convictions for possessing, transmitting, and manufacturing any visual depiction produced using a minor engaged in sexually explicit conduct should be affirmed.

C.

Bach contends that his conviction on count 6 for receipt of child pornography under §2252A(a)(2), based on the picture of a nude boy with AC's face, violates the First Amendment. He relies on Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), to argue that his conviction was unconstitutional, contending that the government did not prove that a real minor was used to produce the image. The government responds that count 6 involves the image of an identifiable minor and this prosecution is not subject to the constitutional infirmity identified in Free Speech Coalition.

The district court instructed the jury that it could find Bach guilty of violating § 2252A(a)(2) if it found that he knowingly received a visual depiction that "involves the use of a minor engaging in sexually explicit conduct" or "has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." This instruction incorporated § 2256(8)(A), the definition of child pornography before the passage of the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. § 2251 et seq., as well as the definition in § 2256(8)(C) added by the CPPA. The judge also instructed the jury that the term "sexually explicit conduct" includes the lascivious exhibition of the genitals or pubic area. 18 U.S.C. § 2256(2).

Bach argues that his conviction is invalid because the definition of child pornography in § 2256(8)(C) violates the First Amendment. He contends that the definition covers images that only appear to depict an identifiable minor and that the definitions found unconstitutional in Free Speech Coalition used similar language. He argues virtual pornography was protected by the Court in Free Speech Coalition because it did not involve the abuse of a real minor and there was no evidence that a real minor was used to produce the image with AC's head. In support he cites

United States v. Reedy, 304 F.3d 358 (5th Cir. 2002), a case in which the Fifth Circuit remanded convictions under § 2252 and § 2252A for resentencing under § 2252.[6]

The government responds that morphed images such as the one in count 6 involve real children with consequential mental harm. It asserts that a morphed image may victimize several children at once because it may contain an underlying picture of real children being abused and exploited, as well as the face of an identifiable child whose own mental health and reputation may suffer. The government also argues that if the definition of child pornography in § 2256(8)(C) were held unconstitutional, pornographers could avoid prosecution by simply pasting the heads of young stars over the faces of their victimized real children. In support it cites United States v. Ellyson, 326 F.3d 522 (4th Cir. 2003), a case in which the Fourth Circuit overturned a conviction under § 2252A because it had been submitted with an instruction using the definition of child pornography in § 2256(8)(B), and also noted that Free Speech Coalition recognized that "unlike virtual images, morphed images 'implicate the interests of real children.'" Ellyson, 326 F.3d at 529 n.2.

Section 2252A was enacted as part of the CPPA to target any person who "knowingly receives or distributes ... any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(2)(A). In Free Speech Coalition, the Supreme Court declared that the CPPA definitions of child pornography in § 2256(8)(B) and (D) were unconstitutional. These definitions were held to be overly broad and to prohibit speech protected by the First Amendment. Bach contends that § 2256(8)(C), the definition of child pornography at issue in his conviction under § 2252A(a)(2), is similarly unconstitutional.

---

[6]The Reedy court stated incorrectly in dicta that Free Speech Coalition found all definitions in §2256(8)(B)-(D) overbroad, and it described the definition in § 2256(8)(C) without reference to the identifiable minor provision.

The definition sections found infirm in Free Speech Coalition were broad enough to include apparent or suggested sexual conduct of a minor. Section 2256(8)(B) applied to any visual depiction that "is, or appears to be, of a minor engaging in sexually explicit conduct," and § 2256(8)(D) covered the depiction of sexually explicit conduct "advertised, promoted, presented, described, or distributed" in a manner to suggest that the material shows a minor engaging in such conduct. Before the CPPA was enacted with its new definitions, child pornography had been defined simply as any visual depiction produced by using a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252, and that definition was retained in § 2256(8)(A) of the new legislation.

Section 2256(8)(C), the definition applied in Bach's prosecution for receiving the image with AC's face, covers any visual depiction that "has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." The definition in subsection (C) was intended by Congress to prevent harm to minors resulting from the use of "identifiable images ... in pornographic depictions, even where the identifiable minor is not directly involved in sexually explicit activities." S. Rep. 104-358, at 8 (1996). In contrast to the definitions of child pornography in subsections (B) and (D), the definition in subsection (C) targets harm to an identifiable minor.

In New York v. Ferber, 458 U.S. 747, 756-58 (1982), the Supreme Court recognized a compelling government interest in preventing the sexual exploitation and abuse of children. The distribution of child pornography is "intrinsically related" to the sexual abuse of children because it creates a "permanent record of the children's participation and the harm to the child is exacerbated by [its] circulation," and the production of pornography requiring the sexual exploitation of children cannot be "effectively controlled" unless that network is closed. Id. at 759. In Free Speech Coalition the Court again focused on these harms, stating that "[l]ike a defamatory

statement, each new publication ... would cause new injury to the child's reputation and emotional well-being." 535 U.S. at 249.

Free Speech Coalition noted that the definition of child pornography in § 2256(8)(B) "covers materials beyond the categories" recognized in its earlier decisions in Ferber and Miller v. California, 413 U.S. 15 (1973)." 535 U.S. at 256. As examples, it suggested that § 2256(8)(B) could potentially be applied to Hollywood movies filmed without any child actors, a Renaissance painting depicting a scene from classic mythology, and a computer generated image if the image "appears to be" a minor engaging in sexually explicit conduct. Id. at 241. The Court stated that such images would not harm or involve any actual children in the production process. Id. Unlike the speech in Ferber which was itself "the record of sexual abuse," some speech covered by subsection (B) would record no crime and create no victims by its production since the virtual pornography covered under the section would not be "'intrinsically related' to the sexual abuse of children." Id. at 250. Subsection (B) went beyond the concerns in Ferber by prohibiting images that do not "depict an actual child," id. at 239, and the definition could therefore not withstand facial attack under the First Amendment. Id. at 256. The Court held that § 2256(8)(D) was also similarly overbroad because sexually explicit materials advertised as child pornography could be prohibited under it, even if no children were actually pictured. Id. at 257-58.

Because the definitions in subsections (B) and (D) could be applied to situations where no actual child could be harmed by the production or distribution of the image, the Court struck them down in the declaratory judgment action in Free Speech Coalition. Not only did the Supreme Court not extend its analysis to the

definition in §2256(8)(C), it explicitly stated that it was not addressing the constitutionality of subsection (C). It differentiated the definition in (C), noting that it

> prohibits a more common and lower tech means of creating visual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in Ferber.

Id. at 242.

Unlike the virtual pornography protected by the Supreme Court in Free Speech Coalition, the picture with AC's face implicates the interests of a real child and does record a crime. The picture depicts a young nude boy who is grinning and sitting in a tree in a lascivious pose with a full erection, his legs spread, and his pelvis tilted upward. The jury could find from looking at the picture that it is an image of an identifiable minor, and that the interests of a real child were implicated by being posed in such a way. This is not the typical morphing case in which an innocent picture of a child has been altered to appear that the child is engaging in sexually explicit conduct, for the lasciviously posed body is that of a child. See S. Rep. No. 108-002, at n.2 (2003) ("[T]he morphing provision is explicitly aimed at the creation of a sexually explicit image using an innocent image of a child.").

Evidence in the record indicates that a photograph of the head of a well known juvenile, AC, was skillfully inserted onto the body of the nude boy so that the resulting depiction appears to be a picture of AC engaging in sexually explicit conduct with a knowing grin. Although there is no contention that the nude body actually is that of AC or that he was involved in the production of the image, a lasting record has been created of AC, an identifiable minor child, seemingly engaged in

sexually explicit activity. He is thus victimized every time the picture is displayed. Unlike the virtual pornography or the pornography using youthful looking adults which could be prosecuted under subsections (B) and (D), as discussed in Free Speech Coalition, this image created an identifiable child victim of sexual exploitation. In Free Speech Coalition the Supreme Court continued to recognize the government's compelling interest in protecting a minor's physical and psychological well being, see 535 U.S. at 249-50, building on its decision in Ferber, pointing out the harm arising from pornography which is "intrinsically related" to the sexual abuse of children. 458 U.S. at 759.

Although there may well be instances in which the application of § 2256(8)(C) violates the First Amendment, this is not such a case. The interests of real children are implicated in the image received by Bach showing a boy with the identifiable face of AC in a lascivious pose. This image involves the type of harm which can constitutionally be prosecuted under Free Speech Coalition and Ferber.

D.

Bach's final argument relates to his sentence on count 7. The district court sentenced him to 15 years on his conviction on that count under 18 U.S.C. § 2251(a), for employing a minor to produce a visual depiction of the minor involved in sexually explicit conduct. At the time of Bach's offense there was a mandatory minimum punishment of 15 years for a § 2251(a) conviction, if the defendant had been previously convicted under state law for an offense "relating to the sexual exploitation of children." 18 U.S.C. § 2251(d) (2001). Although Congress amended the statute in 2003 to increase the mandatory minimum punishment to 25 years by adding § 2251(e), Bach was appropriately sentenced under the lower mandatory term rather than the one in effect at the time of sentencing.

Bach contends that the district court erred in imposing the mandatory minimum sentence, arguing that his prior state conviction did not relate to the sexual exploitation of children but to child abuse, and so his conviction did not fit within the federal statute's triggering definition. He asserts that his 1995 Minnesota conviction for third degree criminal sexual conduct did not involve the production of child pornography and that due process and the rule of lenity require that the term "sexual exploitation of children" be strictly construed against the government and in his favor.

Bach argues that the legislative history of the Protection of Children Against Sexual Exploitation Act of 1977 under which § 2251 was initially enacted, supports his interpretation in that its purpose was to curtail the production and widespread trafficking of child pornography. See S. Rep. No. 95-438 (1977). His conviction for criminal sexual conduct had nothing to do with this activity he asserts. Congress was aware of the distinction between "sexual exploitation of children" and "child abuse" he says, because it distinguished the two terms in other federal statutes. He mentions as an example 18 U.S.C. § 3509, which defines exploitation as "child pornography or child prostitution" and child abuse as "the physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child." He points out that the title of Chapter 110, 18 U.S.C. §§ 2251-2260, is "Sexual Exploitation and Other Abuse of Children" while § 2251, which criminalizes the manufacture of child pornography, is entitled "Sexual exploitation of children."

The government argues that Bach's argument is misplaced, pointing out that this court specifically held in United States v. Smith, 367 F.3d 748, 751 (8th Cir. 2004), that the term "[sexual exploitation of children] unambiguously refers to any criminal sexual conduct with a child." The Minnesota statute on criminal sexual conduct in the third degree covers sexual penetration of a child between 13 and 16. Minn. Stat. § 609.344 subd. 1(b). The government asserts that this Minnesota statutory definition of criminal sexual conduct covers the exact type of conduct

Congress had in mind when it created the § 2251(d) enhancement, citing United States v. Galo, 239 F.3d 572, 581-82 (3d Cir. 2001) (in applying the § 2251(d) enhancement, court should look to statutory definition of prior offense rather than to the conduct giving rise to the conviction).

Bach responds that even though we held in Smith that "sexual exploitation of children" includes any criminal sexual conduct with a child, we should now apply the rule of lenity because Smith did not involve a due process challenge to the interpretation of § 2251(d). We reject this contention. The defendant in Smith had also argued that "sexual exploitation of children" is limited to pornography or criminal sexual conduct captured in visual depictions, but the argument was rejected. Although the federal statute does not define the term sexual exploitation of children, it covers "any criminal sexual conduct with a child [which by its very nature] takes advantage of, or exploits, a child sexually." Smith, 367 F.3d at 751. We also observed that the federal crimes listed in § 2251(d) as triggering the mandatory minimum penalty were not limited to offenses involving pornography or visual depictions. Id. In Smith we held that the term "sexual exploitation of children" unambiguously refers to any criminal sexual conduct with a child, and the rule of lenity does not apply where a statute is unambiguous. Moskal v. United States, 498 U.S. 103, 107-08 (1990). We conclude that the district court did not err by imposing a mandatory minimum sentence under § 2251(d) based on Bach's state court conviction for engaging in criminal sexual conduct with a child.

Bach also argues that the mandatory minimum sentence he received under § 2251(d) is unconstitutional under Blakely v. Washington, 124 S. Ct. 2531 (2004). We disagree because Bach's sentence was within the twenty year maximum sentence authorized by § 2251(d). A prior felony conviction is a sentencing factor and not a separate offense and does not need to be presented to a jury. Almendarez-Torres v. United States, 523 U.S. 224 (1998). That rule was maintained in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), where the Court excluded the fact of a prior

conviction from those issues which must be presented to a jury. United States v. Booker specifically reaffirmed that holding: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. 738, 756 (2005). We conclude that application of the mandatory minimum sentence based on Bach's prior state conviction was appropriate and not unconstitutional under Booker, Blakely, Apprendi, or Almendarez-Torres.[7]

III.

In sum, probable cause existed for the warrant to search Bach's residence for a computer and related evidence. His constitutional and statutory challenges to his convictions under 18 U.S.C. §§ 2251(a) and 2252(a)(1) and (a)(4), are without merit, and § 2252A(a)(2) was not unconstitutionally applied in his prosecution for receiving child pornography in interstate or foreign commerce. Finally, we conclude that the district court did not err in imposing a 15 year mandatory minimum sentence on the manufacturing count. We therefore affirm the judgment of the district court.

HEANEY, Circuit Judge, concurring.

I concur in the majority's well-reasoned opinion. I write separately only with respect to Bach's conviction for receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2). Bach contends that this conviction is constitutionally infirm because it rests on a definition of child pornography, contained in 18 U.S.C. § 2256(8)(C), which he claims violates the First Amendment. Had Bach challenged this statute on the ground that it was facially overbroad, as did the respondents in Ashcroft v. Free Speech Coalition, 535 U.S. 234, 243 (2002), he may well have prevailed on his claim.

---

[7]Bach did not identify any other Blakely issue in his briefs or at oral argument but retains the option of a petition for rehearing.

In my view, the reasoning behind the Supreme Court's decision in Free Speech Coalition, which held subsections (B) and (D) of § 2256(8) unconstitutionally overbroad, applies with equal force to subsection (C). The record reveals, however, that Bach only challenged the statute as it was applied to him. See United States v. Stuckey, 255 F.3d 528, 530-31 (8th Cir. 2001) (noting the court of appeals generally does not consider issues or arguments that have not been raised or articulated on appeal). I agree with the majority that the statute survives scrutiny as applied, and therefore concur.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans